UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANGUS J. TONEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00080-JRO-MG |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND
GRANTING A CERTIFICATE OF APPEALABILITY**

Angus J. Toney filed a petition for a writ of habeas corpus under 28 U.S.C.
§ 2254. Dkt. 2. In 2011, Toney was convicted of burglary and robbery in Wayne
County Superior Court (Case No. 89C01-1010-FA-012) and sentenced to 40
years of imprisonment. Dkt. 9-5 at 56–58. Toney alleges the state appellate court
unreasonably applied *Strickland* when it determined he was not prejudiced by
trial counsel's failure to object to his cross-examination by the State during
allocution. Dkt. 2 at 3–4. The respondent argues the state appellate court
reasonably applied *Strickland* in denying relief. Dkt. 8. For the reasons below,
the petition is denied and a certificate of appealability is granted.

## I.

## BACKGROUND

Toney first sought post-conviction relief in state court.  The Indiana Court of Appeals summarized the key facts of the offenses, trial and sentencing:

> [T]he facts pertaining to Toney's underlying convictions as determined by this court on direct appeal are as follows:
>
>> On the evening of July 19, 2010, Toney and his accomplice, Chris Gregory ("Gregory"), entered into the home of G.R. while wearing bandanas over their faces. Once inside the home, Toney approached G.R., who was with her son C.R. Toney ordered C.R. to the floor and put his foot on the back of the boy's head. Toney put his knife to C.R.'s throat and told G.R. to "shut up" as he demanded her purse, money, and drugs. When she realized that she was still holding her mobile phone, G.R. attempted to dial 911. When Toney saw this, he grabbed G.R.'s hand, twisted the phone out of her hand, and threw the phone across the room. G.R. later testified that this caused her pain. G.R.'s other son heard his mother screaming and came downstairs with a baseball bat. He struck Toney in the head with the bat, causing Toney to bleed. Toney left and sought treatment at the hospital. Drops of Toney's blood were found at G.R.'s house. DNA evidence obtained from this blood was later determined to match Toney.
>
> *Toney v. State*, 961 N.E.2d 57, 58 (Ind. Ct. App. 2012). On August 25, 2010, the State filed an Information, charging Toney with Class A felony burglary resulting in bodily injury and Class B felony robbery.
>
> Trial Counsel was appointed for Toney. On June 29, 2011, Toney pleaded guilty to Class B felony burglary and to Class B felony robbery but elected to proceed to a bench trial on the issue of whether the burglary resulted in bodily injury sufficient to elevate the offense to a Class A felony. After Toney established

2

a factual basis for his plea, the trial court held a bench trial on the sole issue of bodily injury to G.R. . . . At the conclusion of the evidence, the trial court found Toney guilty of Class A felony burglary resulting in bodily injury.

On August 1, 2011, the trial court held Toney's sentencing hearing. At the beginning of the hearing, Toney was sworn in, and he confirmed the accuracy of his presentence investigation report. After Toney's sister provided testimony and was cross-examined by the State, Toney's counsel informed the court that Toney wished to allocute. The trial court inquired if Toney would be testifying or if he would make his allocution, and Trial Counsel confirmed that Toney would allocute. Toney then read a statement in which he discussed his remorse, his battle with drugs and alcohol, and his involvement in his three children's lives. While Toney was reading his statement, the following colloquy took place between the trial court and Trial Counsel:

> Court: [Trial Counsel], is this still allocution? It doesn't sound like it.
>
> Trial Counsel: Okay, I'm sorry.
>
> Court: And the only reason why I'm saying that, the big difference is he can be cross-examined on some things. . . . 'Cause allocution is just saying I'm sorry.
>
> Trial Counsel: And I have no issue . . . if the State wishes to cross-examine my client on these issues, but he wanted to make a statement to the [c]ourt.
>
> Court: And I . . . want him to say everything he wants, I just don't want to get into a catch bag where he's called it one thing and it may actually . . . be different.
>
> Trial Counsel: — fine if the State has anything that he wants to bring up with my client, that's fine.

3

Toney finished his statement, providing additional details about his interaction with his children, his work history when not incarcerated, and his goals for the future. The prosecutor then cross-examined Toney about the fact that he was on parole when he committed the instant offense; the child support arrearage he had accumulated; the current living arrangements for his children; his long-term substance abuse; and the fact that he had used money to buy drugs when he could have paid child support.

After hearing the arguments of the parties, the trial court found "the elephant in the room", Toney's criminal record, consisting of a juvenile adjudication for child molesting, eight adult misdemeanor convictions, including one committed while on parole and one committed while incarcerated for the present offenses, two felony convictions, six incarcerations, and two probation revocations, as an aggravating circumstance to which it attached "significant weight." The trial court also found the facts that Toney was on parole when he committed new offenses, G.R. was a frail victim, and that G.R. was attempting to summon aid when Toney took her cellphone from her forcibly as additional aggravating circumstances. The trial court found Toney's remorse to be mitigating but discounted its importance due to Toney being more concerned with obtaining his share of the proceeds of the offenses than with his remorse immediately following the offenses and because of the brutality of the offenses. The trial court discounted the mitigating weight of Toney's drug and alcohol use due to his failure to take advantage of prior opportunities for treatment. The trial court accorded little weight to Toney's proffered mitigator of undue hardship to his dependents, due to the fact that even a minimum sentence in the instant case would mean his children would be almost adults by the time of his release and because Toney's pattern of incarcerations had meant that he had been largely absent from his children's lives. The trial court also found Toney's guilty plea to be a mitigating factor. The trial court found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Toney to forty years for the Class A felony burglary and to sixteen years for the Class B felony robbery, to be served concurrently.

*Toney v. State*, 226 N.E.3d 248, at *1–2 (Ind. Ct. App. 2023), *trans denied.*

(footnotes and citations to the state court record omitted).

## II.

## GOVERNING STANDARDS

### A.   Antiterrorism and Effective Death Penalty Act ("AEDPA")

A federal court may grant habeas relief only if the petitioner demonstrates he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a).   The AEDPA sets forth the standard of review generally applicable in habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme] Court." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.  A federal habeas court presumes a state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(d)(2) and (e)(1).

### B.      Standards for Evaluating Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel ("IAC") has the burden to demonstrate (1) the attorney made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense. *See Williams,* 529 U.S. at 390–91 (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)).

To establish ineffectiveness, the defendant must show counsel's representation fell below an objective standard of reasonableness.  *See Strickland,* 466 U.S. at 687–88. To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.*

6

### III.

### DISCUSSION

Toney alleges trial counsel provided ineffective assistance at sentencing by failing to object to the State's cross-examination of Toney.  Dkt. 2.  He alleges he was prejudiced by counsel's deficient performance because he would have received a lower sentence had the trial court not learned through the State's cross-examination that (1) he was on parole during the commission of the offenses; (2) he accumulated child-support arrearages; (3) he had engaged in long-term drug and alcohol abuse and had used money to buy drugs when he could have paid child support; and (4) the current living arrangements for his children.  Dkts. 2 at 4, 5–6; 14 at 5–6.

Toney raised this claim in a state post-conviction petition.  Dkts. 8-8 at 4–5; 8-9 at 11–15.  On appeal from the denial of the petition, the Indiana Court of Appeals, applying *Strickland*, determined trial counsel's performance was deficient, but Toney had not established prejudice because the trial court did not rely on any fact contained in the State's cross-examination of Toney that was not already before the trial court in Toney's Presentence Investigation Report ("PSIR"):

> On January 18, 2013, Toney filed a petition for post-conviction relief, which he amended on July 14, 2022. Toney contended that Trial Counsel rendered ineffective assistance when she failed to object to the State's cross-examination of him at sentencing . . . . On August 17, 2022, the post-conviction court held a hearing on Toney's petition. Trial Counsel testified that she did not have a strategic reason for failing to object to the State cross-examining Toney at sentencing . . . .

On December 1, 2022, the post-conviction court entered its Order denying relief. The post-conviction court entered the following relevant findings:

> [A]s to [Toney's] first contention that [T]rial [C]ounsel was ineffective for failing to object when the State was permitted to cross-examine [Toney] during allocution, . . . [Toney] has failed to show that counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms and importantly that counsel's performance prejudiced [Toney] to a degree that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
>
> It is noteworthy that [Toney] presented no evidence as to whether other information to be considered by the [c]ourt did or did not contain any of the information contained in the question and answer exchange between the State and [Toney].

. . . .

Toney appeals following the post-conviction court's denial of his petition for post-conviction relief. Petitions for post-conviction relief are civil proceedings in which a petitioner may present limited collateral challenges to a criminal conviction and sentence. *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018). In such a proceeding, the petitioner bears the burden of establishing his claims by a preponderance of the evidence. *Id.* When a petitioner appeals from the denial of his petition for post-conviction relief, he stands in the position of one appealing from a negative judgment. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014). To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence "as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Id.* In addition, where a post-conviction court enters findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to its legal conclusions, but we will reverse its findings and

8

judgment only upon a showing of clear error, meaning error which leaves us with a definite and firm conviction that a mistake has been made. *Id.*

. . . .

Toney argues that Trial Counsel's performance at his sentencing hearing was ineffective. We evaluate ineffective assistance of trial counsel claims under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must show that 1) his counsel's performance was deficient based on prevailing professional norms; and 2) that the deficient performance prejudiced the defense. *Weisheit*, 109 N.E.3d at 983 (citing *Strickland*, 466 U.S. at 687). To establish that counsel's performance was deficient, a petitioner must show that counsel's actions were unreasonable under prevailing professional norms. *Id.* In evaluating this element on appeal, we afford considerable deference to counsel's choice of tactics and strategy. *Id.* In order to demonstrate sufficient prejudice, the defendant must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* A defendant's failure to satisfy either the 'performance' or the 'prejudice' prong of a *Strickland* analysis will cause an ineffective assistance of counsel claim to fail. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006).

Toney's specific claim of Trial Counsel ineffectiveness is that counsel failed to object when the State was allowed to cross-examine him during his allocution. The "right of allocution" is the opportunity provided to criminal defendants to offer a statement on their own behalf prior to sentencing. *Biddinger v. State*, 868 N.E.2d 407, 410 (Ind. 2007). This right is codified at Indiana Code section 35-38-1-5(a), which provides in relevant part that "[t]he defendant may also make a statement personally in the defendant's own behalf[.]" The purpose of allocution is to provide the trial court with the opportunity to consider "the facts and circumstances relevant to the sentencing of the defendant in the case

9

before it" and for the defendant "to articulate reasons as to why judgment should not be imposed at that time." *Ross v. State*, 676 N.E.2d 339, 343–44 (Ind. 1996). Allocution is not evidence, and a defendant is not subject to cross-examination upon his or her statement. *Biddinger*, 868 N.E.2d at 413.

In *Ross*, the defendant, who had murdered his ex-wife, exercised his right to allocution at sentencing by reading a prepared statement into the record about his family and his personal history. *Ross*, 676 N.E.2d at 342. After several minutes, the trial court interrupted Ross and admonished him that the purpose of his allocution was to inform the trial court of "anything that he would like to tell me in his own behalf" and not to detail his entire family history. *Id.* After a break, Ross' counsel objected to the limitation on Ross' allocution and had the remainder of Ross' written statement entered into the record. The trial court repeated its admonishment to Ross, who then completed his oral statement in which he touched upon, among other topics, his lack of criminal record, his children and his remorse for the pain they were experiencing, his pain, his character, how he would miss his victim and his children if sent to prison, his remorse for violating a restraining order his ex-wife held against him, and why he thought it was important for the trial court to examine his life before the murder. *Id.* After the trial court sentenced Ross to sixty years, he appealed, arguing that the trial court had erred in restricting his allocution. *Id.* Our highest court disagreed, holding that, while a trial court should exercise caution about restricting allocution, in Ross' case "[t]he court was acting within its discretion when it stopped Ross and told him to direct his statement toward the proper purpose." *Id.* at 344. The Ross court also observed that there are boundaries to the scope of permissible allocution and that it is not an opportunity for the defendant to deliver a diatribe against the judge, the court, or the judicial system or to speak on philosophical, religious, or political issues. *Id.*

Here, although Toney never delivered an impermissible diatribe or spoke about abstract issues, at times his allocution strayed from the topics of the facts and

10

circumstances of his case and any reason why judgment should have been withheld in his case. Therefore, in light of *Ross*, the trial court could have, within its discretion, directed Toney to guide his statement towards its proper purpose. *See id.* However, Toney, through his counsel, had signaled before Toney began speaking that he intended to make his personal statement and not to testify, and we discern nothing in Toney's statement which altered that purpose or that somehow transformed his statement into testimony that would have been subject to cross-examination. At the post-conviction hearing, Trial Counsel was unable to enunciate any tactical reason for her failure to object to the State's cross-examination. Therefore, we conclude that if Trial Counsel had properly objected to the State being allowed to cross-examine Toney, that objection would have been sustained, and, therefore, that Trial Counsel's failure to object constituted deficient performance. *See Isom v. State*, 170 N.E.3d 623, 642–43 (Ind. 2021) (holding that in order to prove deficient performance for failing to object, a petitioner must show that the trial court would have sustained counsel's objection).

However, in order to obtain a reversal of the trial court's sentencing order, Toney must also demonstrate that he was prejudiced by Trial Counsel's deficient performance. *Weisheit*, 109 N.E.3d at 983. Toney's claim of prejudice on this issue is that "the State was able to create rebuttal evidence for the trial court to consider during [his] sentencing." On appeal, Toney does not even attempt to meet his burden to demonstrate that there was a reasonable probability that the trial court's sentencing order would have been different had the State not been allowed to cross-examine him. *See Weisheit*, 109 N.E.3d at 983. Indeed, a comparison of the State's cross-examination and the trial court's sentencing statement confirms that when finding and weighing the aggravating and mitigating circumstances the trial court did not rely on any fact contained in the State's cross-examination of Toney that was not already before the trial court in Toney's presentence investigation report. Therefore, although we have found Trial Counsel's performance to be deficient, we affirm the post-conviction court's denial of

11

relief on this issue because Toney has failed to establish that the post-conviction court's findings of fact or its conclusion that Toney had failed to demonstrate that he was prejudiced by Trial Counsel's performance were clearly erroneous. *Hollowell*, 19 N.E.3d at 269; *see also Taylor*, 840 N.E.2d at 331 (failure to demonstrate prejudice is fatal to a claim of post-conviction relief).

. . . .

Based on the foregoing, we hold that the post-conviction court's denial of Toney's claims of ineffective assistance of Trial Counsel . . . was not clearly erroneous.

*Toney v. State*, 226 N.E.3d 248, at *3–7 (Ind. Ct. App. 2023), *trans denied*.

(footnotes and citations to the state-court record omitted).

This Court finds the Indiana Court of Appeals' determination is neither contrary to nor constitutes an unreasonable application of *Strickland's* prejudice prong and is not based on an unreasonable determination of fact considering the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d); *See also Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001) (explaining a court need not consider the first prong of the *Strickland* test if it finds counsel's alleged deficiency caused no prejudice) (citing *Strickland*, 466 U.S. at 697 ("[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")).

Toney's *Strickland* claim fails because all the evidence he says the trial court learned through the State's cross-examination of his allocution was either

12

duplicative of information the trial court already learned through the PSIR or not relied upon by the trial court at all.

First, Toney alleges he was prejudiced by counsel's deficient performance because he would have received a lower sentence had the trial court not learned through the State's cross-examination that he was on parole during the commission of the offenses. Dkt. 2 at 4, 5–6; Dkt. 14 at 5–6. This argument fails. The state-court record, indeed, confirms the trial court considered, as one of many aggravating circumstances, that Toney committed the instant offenses while released on parole. Dkt. 9-2 at 103–08. But that information is also contained in the PSIR, which explains Toney was arrested for the instant offense on November 1, 2010, after serving a six-year sentence that he acquired in 2006, and for which he was discharged from parole on July 29, 2011. The PSIR further confirms that he was on parole at the time of the offense. Dkt. 10-1 at 2, 5 ("At time of offense, on probation/parole? Yes."). Thus, it was objectively reasonable for the state appellate court to conclude the State's cross-examination about Toney's commission of the offense while on parole was not prejudicial as the PSIR presented that information to the trial court.

Second, Toney alleges he was prejudiced by counsel's deficient performance because he would have received a lower sentence had the trial court not learned through the State's cross-examination that he engaged in long-term drug and alcohol abuse. Dkt. 2 at 4, 5–6; Dkt. 14 at 5–6. The Court is not persuaded. The state-court record, indeed, confirms the trial court considered Toney's chronic use and/or abuse of alcohol and drugs as a mitigating

circumstance but gave it minimal weight because Toney had opportunities to do something about it yet did not take advantage of them. Dkt. 9-2 at 110. But that information was also contained in the PSIR. First, the PSIR states, "The defendant reported that he started using drugs, Heroin, Oxycontin and pain killers, when he was sixteen or seventeen years old and that he used for about three to four years. When he was twenty-one years old, he started using daily until he was arrested. He reported that he had tried Crack Cocaine." Dkt. 10-1 at 11–12. Second, the PSIR explained Toney was convicted of possession of marijuana in 2002, public intoxication and minor consuming alcoholic beverage in 2003, and possession of marijuana in 2004 where he incurred a drug interdiction fee. *Id.* at 4. Finally, the PSIR states Toney reported he had been subject to court-ordered treatment and initiated treatment on his own but had relapsed after three months. *Id.* at 12. Thus, it was objectively reasonable for the state appellate court to conclude that, before the cross-examination, the PSIR had already informed the trial court about Toney's drug abuse.

Third, Toney also alleges he was prejudiced by counsel's deficient performance because he would have received a lower sentence had the trial court not learned through the State's cross-examination about the current living arrangements for his children. Dkt. 2 at 4, 5–6; Dkt. 14 at 5–6. Not so. The state-court record shows the trial court attached slight weight to the fact that imprisonment would result in undue hardship to Toney's children, but did so as a *mitigating* circumstance. Dkt. 9-2 at 111–12. The trial court found it hard to afford "a whole lot of mitigation" as Toney was in prison for significant portions

of his children's lives and his role as father had not dissuaded him from continuing to engage in criminal behavior. *Id.* at 113. The PSIR reported the facts the trial court relied upon as it provided the ages of Toney's three children (5, 9, and 11 years old) and set forth Toney's criminal record showing his dates of incarceration beginning in 2002. Dkt. 10-1 at 3. Thus, it was objectively reasonable to conclude the trial court did not rely on facts about Toney's children that were not already disclosed in the PSIR in any way that increased his sentence. If anything, it may have (slightly) reduced his sentence.

Finally, Toney alleges he was prejudiced by counsel's deficient performance because he says he would have received a lower sentence had the trial court not learned through the State's cross-examination that he had accumulated child-support arrearages and, at times, used his money to purchase drugs rather than pay child support. Dkt. 2 at 4, 5–6; Dkt. 14 at 5–6. This argument also fails. The trial court did not assert that it relied upon Toney's child support arrearages or his paying for drugs in lieu of paying child-support. Dkt. 9-2 at 103–16. Thus, the trial court does not appear to have relied on the State's cross-examination of Toney regarding those facts. Even if it did so, the PSIR already disclosed his child-support arrearages. Toney admitted he had: "Debts: $20,000-$30,000 (hospital bill and child support arrears)." Dkt. 10-1 at 11. The PSIR also discloses that Toney was buying drugs. Dkt. 10-1 at 12. The trial court could have reasonably put two and two together.

Even if the fact that Toney had used child support money to buy drugs was previously undisclosed, the Court is not persuaded that Toney has shown a

15

reasonable probability that this fact, alone, materially impacted the duration of his sentence. *Strickland,* 466 U.S. at 687–88. Given the weight of all the evidence in support of his sentence, and the weight of the evidence that he contests, but was already disclosed in the PSIR, this Court cannot reasonably say his sentence would have been any less.

For the foregoing reasons, this Court concludes the Indiana Court of Appeals was objectively reasonable in its application of *Strickland's* prejudice prong and its determination that Toney failed to establish, but for counsel's deficient performance in failing to object to cross-examination during allocution, there is a reasonable probability the result of the sentencing proceeding would have been different. Therefore, Ground 1 is denied.

## IV.

### CERTIFICATE OF APPEALABILITY

This Court must consider whether to grant or deny a certificate of appealability (COA). For claims rejected on the merits, to obtain a COA, "a habeas prisoner must make a substantial showing of the denial of a constitutional right . . . *or* that the issues presented are 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)) (emphasis added).

Applying these standards, this Court concludes a COA is warranted for Ground 1.

## V.

## CONCLUSION

Angus J. Toney's petition for a writ of habeas corpus under 28 U.S.C. § 2254, dkt. [2], is **DENIED**, and a certificate of appealability is **GRANTED** for Ground 1.

Judgment consistent with this Order shall now issue by separate entry.

**SO ORDERED.**

Date: 4/10/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

ANGUS J. TONEY
162450
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Tyler G. Banks
INDIANA ATTORNEY GENERAL
tyler.banks@atg.in.gov

17